**UNITED STATES of America,
Plaintiff-Appellant,**

v.

**William R. LAMBERT, Lucille H. Lambert, and Richard Angel, Individually and d/b/a Southern Seafood Co. of Florida, Defendants-Appellees.**

No. 81–5789.

United States Court of Appeals,
Eleventh Circuit.

Jan. 14, 1983.

Elizabeth A. Jenkins, Asst. U.S. Atty., Orlando, Fla., Nancy J. Marvel, David E. Dearing, Anne Almy, Attys., Environmental Defense Section, Land & Natural Resources Div., U.S. Dept. of Justice, Washington, D.C., for plaintiff-appellant.

Allen C.D. Scott, II, Maxwell & Scott, Jacksonville, Fla., Robert J. DeLucia, for defendants-appellees.

Michael A. Sterlacci, Washington, D.C., for F./Washington Legal Foundation.

Before RONEY, TJOFLAT and FAY, Circuit Judges.

RONEY, Circuit Judge:

The Government appeals from the denial of a preliminary injunction which it sought to restrain appellees, William R. Lambert, Lucille H. Lambert, and Richard Angel (Lambert), from further construction, filling, or discharging pollutants into the wetlands adjacent to the Banana River without a permit from the United States Army Corps of Engineers (Corps). The district court found that although the Government had demonstrated a likelihood it would prevail on the merits of the litigation, it had failed to demonstrate that the effects of Lambert's activities, even if continued during the pendency of the litigation, could not be remedied by a permanent injunction, a civil fine, or both. Thus the district court concluded the Government had not established the irreparable harm prerequisite to a preliminary injunction. We find no abuse of discretion and accordingly affirm.

Before considering the facts of this case, it is helpful to review the statutory framework. In its complaint the Government alleged that Lambert had violated § 301(a) of the Clean Water Act of 1977 (CWA), 33 U.S.C.A. §§ 1251–1376, by discharging fill material into navigable waters of the United States without the prior authorization of the Corps. The objective of the CWA is "to restore and maintain the chemical, physical, and biological integrity of the Nation's waters." 33 U.S.C.A. § 1251(a). The Act prohibits the discharge of any pollutant unless in compliance with the Act, *id.* § 1311(a), and defines "pollutant" to include "dredged spoil, solid waste, . . . rock, sand, [and] cellar dirt . . . discharged into water." *Id.* § 1362(6). Regulations promulgated by the Corps further define dredged and fill material and their discharge. 33 C.F.R. § 323.2(k)–(n) (1981). The Secretary of the Army, acting through the Chief of Engineers, is authorized to issue permits for the discharge of dredged or fill materials into navigable waters. 33 U.S.C.A. § 1344.

Discharge of a pollutant includes the addition of a pollutant to navigable waters, *id.* § 1362(12), which are defined as "waters of the United States, including the territorial seas." *Id.* § 1362(7). It is generally agreed that Congress intended "waters of the United States" to reach to the full extent permissible under the Constitution. *See United States v. Byrd,* 609 F.2d 1204, 1209 (7th Cir.1979); *Leslie Salt Co. v. Froehlke,* 578 F.2d 742, 754–55 (9th Cir.1978); *United States v. Ashland Oil & Transportation Co.,* 504 F.2d 1317, 1324–25 (6th Cir.1974). Accordingly, the Corps' regulations define "waters of the United States" to include wetlands adjacent to tributaries to navigable waters, 33 C.F.R. § 323.2(a)(3) (1981), even though wetlands are not specifically mentioned in the Act itself. Under the regulations the term "wetlands" means "those areas that are inundated or saturated by surface or ground water at a frequency and duration sufficient to support, and that under normal circumstances do support, a prevalence of vegetation typically adapted for life in saturated soil conditions. Wetlands generally include swamps, marshes, bogs and similar areas." *Id.* § 323.2(c) (1981). Adjacent wetlands are those "bordering, contiguous, or neighboring" navigable waters, including "[w]etlands separated from other waters of the United States by man-made dikes or barriers, natural river berms, beach dunes and the like." *Id.* § 323.2(d) (1981).

Mr. and Mrs. Lambert own a 37-acre parcel of land adjacent to the Banana River in Brevard County, Florida. Since 1977 Lambert has used this tract as a disposal site for the shells of scallops processed by a seafood company owned and operated by the Lamberts. The seafood company produces an average of four million pounds of excess shells a week, requiring 15 or 20 truckloads of shells per day to be transported from the processing plant.

The property lies to the west of the Banana River and to the north of a tributary. Running along the eastern and southern boundaries of the property is a dual lane highway which separates the Lambert tract

from the Banana River. A culvert has been excavated underneath the highway adjacent to the southwest corner of the property and leading to the tributary of the Banana River. In its natural state the property contained three prongs of wetlands which comprised approximately one-half of the 37 acres. Lambert disputes the categorization of any portion of the property as wetlands.

On January 31, 1980 the Corps asserted jurisdiction over the wetland portion of the property and sent Lambert a cease and desist order. Lambert subsequently removed fill from the wetlands and created a man-made wetland. In August 1980 Lambert announced to Corps representatives his intention to begin filling the wetlands. After Lambert resumed the discharge of fill material into the wetlands without obtaining a permit, the Corps issued a second cease and desist order. Lambert nevertheless continued filling the wetlands. Fill roads of shell and sand were constructed and a borrow pit was excavated. The borrow pit was filled with rain and subterranean water and became a small lake.

The Government filed a complaint for injunctive relief and civil penalties against the Lamberts and Richard Angel, their equipment operator, alleging a violation of § 301(a) of the CWA, 33 U.S.C.A. § 1311(a). Motions for a restraining order and a preliminary injunction were also filed. After a three-day evidentiary hearing on the Government's motion for a preliminary injunction, the district court found there was a reasonable probability the Government would be able to prove the Lambert property contains three wetlands. The court ruled that the backspill resulting from excavation of the central wetland by dredging was not the discharge of a pollutant under 33 U.S.C.A. § 1311(a) but that placing a fill mat on the wetlands, dripping spoil on wetlands adjacent to the dredged sites, and construction of fill roads on the wetlands did constitute violations of the CWA. The court determined that the evidence did not establish that the damage from the alleged violations, even if they continued during the pendency of the litigation, could not be remedied by a permanent injunction or a civil fine or both. Therefore, the district court concluded the Government failed to establish irreparable harm and consequently denied the application for a preliminary injunction.

The grant or denial of a preliminary injunction is a decision within the sound discretion of the district court. *Deerfield Medical Center v. City of Deerfield Beach,* 661 F.2d 328, 332 (5th Cir.1981). On appeal from the grant or denial of a preliminary injunction we do not review the intrinsic merits of the case. "It is the function of the trial court to exercise its discretion in deciding upon and delicately balancing the equities of the parties involved." *Tatum v. Blackstock,* 319 F.2d 397, 401–02 (5th Cir.1963); *see Wooten v. Ohler,* 303 F.2d 759, 761–62 (5th Cir.1962). We consider the court's decision under the abuse of discretion standard of review.

The court must exercise its discretion in light of the following four prerequisites for a preliminary injunction: "(1) a substantial likelihood that plaintiff will prevail on the merits, (2) a substantial threat that plaintiff will suffer irreparable injury if the injunction is not granted, (3) that the threatened injury to plaintiff outweighs the threatened harm the injunction may do to defendant, and (4) that granting the preliminary injunction will not disserve the public interest." *Canal Authority v. Callaway,* 489 F.2d 567, 572 (5th Cir.1974). Because a preliminary injunction is "an extraordinary and drastic remedy," its grant is the exception rather than the rule, and plaintiff must clearly carry the burden of persuasion. *Texas v. Seatrain International, S.A.,* 518 F.2d 175, 179 (5th Cir.1975).

It must be emphasized that the subject of this appeal is the denial of an injunction pending a final hearing and decision by the court. The purpose of such a preliminary injunction is "merely to preserve the relative positions of the parties until a trial on the merits can be held." *University of Texas v. Camenisch,* 451 U.S. 390, 395, 101 S.Ct. 1830, 1834, 68 L.Ed.2d

175 (1981). *See Collum v. Edwards,* 578 F.2d 110, 113 (5th Cir.1978). Preservation of the status quo enables the court to render a meaningful decision on the merits. *Canal Authority,* 489 F.2d at 573. Thus the harm considered by the district court is necessarily confined to that which might occur in the interval between ruling on the preliminary injunction and trial on the merits. Over a year has now elapsed. Any reversal by this Court could affect only whatever harm might occur between the date of our order and a decision on the merits. Often parties who appeal from a denial of a preliminary injunction fail to appreciate that fact. If the energy spent on appealing a denial of a preliminary injunction were spent on bringing a case to final resolution, it would seem that any continuing harm might thereby be mitigated. The delay caused by the appeal ensures that any injunction now would be short-lived because surely the case is nearing final hearing in the district court. In addition, the parties indicated at oral argument that Lambert had located an alternate site for the scallop shells and has discontinued, at least for the time being, the filling complained of by the Government.

A review of the record reveals that although the district court might have issued an injunction, a denial was clearly within its discretion. The Government has fallen short of carrying its burden of showing the second factor required by *Canal Authority* to compel an injunction as a matter of law, *i.e.,* that irreparable harm is likely if an injunction is not granted. Environmental litigation is not exempt from this requirement. *Id.* at 574; *Florida Wildlife Federation v. Goldschmidt,* 506 F.Supp. 350, 353 (S.D.Fla.1981). The bulk of the testimony by the Government's witnesses at the evidentiary hearing was directed to establishing that the three areas of the property in question met the Corps' definition of wetlands. The Government's success in establishing a likelihood it will prevail on the merits does not obviate the necessity to show irreparable harm.

Dr. Banner, one of the Government's experts, testified that the wetland areas of the property had been reduced in size by dredging, scraping of vegetation, and filling. He also testified that filling the wetlands prevents the growth of vegetation and that construction of the fill road impedes the flow of detritus, dissolved organic material that provides food for fish and shrimp, from the property to the Banana River. Dr. Banner and Dr. Taruski, the other Government expert, testified that the small lake created by the excavation on the property was likely to be polluted unless preventive measures were taken. While this testimony supports the finding of the district court that certain of Lambert's activities were in violation of the CWA, it does nothing to support a finding of injury that could not be remedied by relief following a decision on the merits. Harm alone is insufficient. A decision as to the propriety of a preliminary injunction turns on the balance of harm and the ability to compensate an injured party.

The Government argues that even if restoration is ordered by the district court, it may not be effective. *See United States v. Sexton Cove Estates, Inc.,* 526 F.2d 1293, 1301 (5th Cir.1976). Yet the only evidence relevant to the irreparable nature of the harm cited was Dr. Banner's testimony that continued filling would make restoration "more difficult, more expensive, and more uncertain." Such evidence is insufficient in and of itself to require a finding of irreparable harm that overcomes the equities against an injunction.

The district court might well have come to a different conclusion had it known that there would be over a year's delay before the case would reach final hearing. Since the parties have indicated discovery is virtually complete, however, we are sure the district court will hold a prompt hearing to resolve the case finally on the request of the parties. In the meantime, a renewed request of the district court for a preliminary injunction can always be made if facts and circumstances change in the Government's favor. As reported to us at oral argument, however, it appears that less

·harm is occurring now than was occurring at the time of the initial request.

AFFIRMED.