**GLOBAL TOOL CORPORATION,**
**Plaintiff,**

v.

**L & N SALES AND MARKETING,**
**INC., Laurie Cohen, and Neal**
**Menaged, Defendants.**

No. 84–6103–Civ–JCP.

United States District Court,
S.D. Florida.

June 6, 1984.

Lawrence G. Kurland, Hubell, Cohen, Steifel & Gross, P.C., New York City, Harry G. Carratt, Morgan, Carratt & O'Connor, P.A., Fort Lauderdale, Fla., for plaintiff.

John B. DiChiara, DiGiulian & DiChiara, P.A., Fort Lauderdale, Fla., for defendants.

## ORDER

PAINE, District Judge.

This cause came on for a hearing, held May 4, 1984, on Plaintiff's application for a preliminary injunction (Docket Entry 6), filed March 6, 1984. In its application, Plaintiff asks that this Court enjoin Defendants from several elements of what Plaintiff alleges is unfair competition by Defendants. The Court of Appeals for the Eleventh Circuit has recently described the standards to be applied by a trial court in hearing a request for a preliminary injunction:

The grant or denial of a preliminary injunction is a decision within the sound discretion of the district court.....

The court must exercise its discretion in light of the following four prerequisites for a preliminary injunction: "(1) a substantial likelihood that plaintiff will prevail on the merits, (2) a substantial threat that plaintiff will suffer irreparable injury if the injunction is not granted, (3) that the threatened injury to plaintiff outweighs the threatened harm the injunction may do to defendant, and (4) that granting the preliminary injunction will not disserve the public interest."
.... Because a preliminary injunction is "an extraordinary and and drastic remedy," its grant is the exception rather than the rule, and plaintiff must clearly carry the burden of persuasion.

*United States v. Lambert,* 695 F.2d 536, 539 (11th Cir., 1983) (citations omitted). This Court has considered the submissions of the parties, as well as the evidence and arguments of counsel presented at the hearing. Applying the four-part standard described in *Lambert,* supra, to each of the elements of Plaintiff's application (as discussed below), this Court believes that Plaintiff's application should be granted in part and denied in part. This Court begins

its analysis by noting that, in ruling upon Plaintiff's application for a preliminary injunction, this Court does not need to reach (and does not reach) the question of whether Defendants have indeed engaged in the activities which Plaintiff seeks to halt. Thus, this Court, by its determination here, wishes to avoid any intimation of this Court's views as to whether Defendants have actually undertaken any of the actions of which Plaintiff complains.

### A.

■ Plaintiff first asks this Court to enjoin Defendants from "representing and misrepresenting and otherwise stating, establishing or suggesting that Plaintiff's attachments are samples of attachments being sold by Defendants." In answering this action, Defendants argue that Defendants are marketing an item sufficiently different in design from that of Plaintiff. A claim that Plaintiff's items are examples of Defendants' merchandise would be false. To bar Defendants from making false statements cannot place too substantial a burden on Defendants, and this Court will grant this first element of Plaintiff's application.

### B.

■ Plaintiff next asks this Court to prohibit Defendants from "making, using or selling any screwdriver attachment for electric drills with a shape and configuration such that the ordinary consumer is likely to be confused as to the source or origin of such attachment." Plaintiff claims that the item marketed by Defendants (under the name "TRUE TORQUE") is so similar to that marketed by Plaintiffs (under the name "POWERDRIVER") that such confusion may be expected to arise. Puddles of confusion, however, are often the unavoidable offshoots of the rivers of commerce and competition. The Court of Appeals for the First Circuit has recognized that

.... Because of the consuming public's "interest in free competition and in economic and technological progress," functional features which are not the subject

of a valid patent or copyright may be imitated with impunity.

*Fisher Stoves, Inc. v. All Nighter Stove Works, Inc.*, 626 F.2d 193, 195 (1st Cir., 1980) (citations omitted). See also *John H. Harland Co. v. Clarke Checks, Inc.*, 711 F.2d 966, 982 (11th Cir., 1983) (following *Fisher Stoves*). The issue of functionality is a question of fact. *John H. Harland Co.*, supra, at 982. At the hearing on Plaintiff's application, Defendant called as a witness Eugene Malin, an engineer and patent attorney. Mr. Malin testified that he could detect no nonfunctional features in either Plaintiff's or Defendant's product. (Mr. Malin additionally testified that he felt that the two items were distinguishable.) Defendants have filed an excerpt of the deposition of Thomas R. Lawton, Plaintiff's president, taken on May 1, 1984 (Docket Entry 25). In that portion of the deposition, Mr. Lawton agreed that everything (in Plaintiff's product) "is there to perform a function and does perform a function." (Page 61, lines 11–14.) This Court believes that Defendants have presented evidence which is at least sufficient to suggest that there is not a substantial likelihood that Plaintiff will ultimately prevail on this issue of functionality. Plaintiff has failed to convince this Court that Plaintiff has no adequate remedy at law, or that Plaintiff will suffer irreparable injury if the injunction is not granted. Defendants contend that if this element of Plaintiff's application is granted, so that Defendants could not market their product, Defendants would be effectively put out of business. After weighing the factors of *Lambert*, supra, this Court believes that this element of Plaintiff's request should be denied.

### C.

■ As the third element of Plaintiff's request, Plaintiff seeks to enjoin Defendants from "falsely representing themselves as being connected with Plaintiff, Global, or engaging in any act which is likely to cause the trade and purchasing public to believe that Defendants are in any way associated with or sponsored by Plaintiff,

Global." For the reasons cited with reference to the first element of Plaintiff's application (Paragraph "A", above), this Court will grant this third element.

### D.

■ Fourth, Plaintiff seeks to enjoin Defendants from "affixing, applying or annexing, or using in connection with the sale of any products or the rendering of any services any false designations and representations, including words or other symbols tending falsely to describe, designate or represent Defendants' goods and services." Again, for the reasons cited with reference to the first element of Plaintiff's application, this Court will grant this part. This Court will limit the activity prohibited, however, to false designations or descriptions, which are meant to convey an association by Defendants with Plaintiff.

### E.

■ Fifth, Plaintiff seeks an order barring Defendants from "selling, offering for sale and/or shipping or filling orders for any screwdriver attachments for electric drills sold by Defendants under the designation POWERDRIVER and/or which is likely to be confused with Plaintiff's mark POWERDRIVER." Plaintiff has alleged that Plaintiff's registered mark "POWERDRIVER" is assigned to the recorded television commercial for Plaintiff's product, and *not for the product itself.* However, Plaintiff does, in that commercial, use the name "POWERDRIVER" in describing and identifying Plaintiff's product. For Defendant's to market their product under that name may constitute unfair competition. To restrain Defendants from using the term "POWERDRIVER" in marketing and identifying their product would not seem to be unjust. The interest of Plaintiff in protecting any advantage which Plaintiff may have built up by Plaintiff's repeated self-association with the term "POWERDRIVER" would outweigh any harm in denying to Defendants the use of that term. This is especially true where there are so many other similar words and phrases available to Defendants.

Accordingly, it is ORDERED and ADJUDGED that Plaintiff's application (Docket Entry 6) for a preliminary injunction, filed March 6, 1984, is granted in part, and denied in part. Pending the disposition of this action, and until further order of this Court, Defendants, their agents and servants, and anyone acting in concert with them and having notice of this order, are each and all enjoined from any and all of the following:

1. Representing, stating, or otherwise suggesting that any product or item marketed or distributed by Plaintiff GLOBAL TOOL CORPORATION is in any way connected with, or associated with, any product or item marketed or distributed by Defendants;

2. Representing, stating, or otherwise suggesting that Defendants, their agents and servants, or anyone acting in concert with them, are themselves in any way connected with, or associated with, Plaintiff or Plaintiff's agents and servants;

3. Making any false statements regarding the origin of Defendants' products; and

4. Incorporating, in any description of any of Defendants' products, the word "POWERDRIVER", except that such word may be used to distinguish and disassociate products and items marketed by Defendants from those marketed by Plaintiff.