Elizabeth A. HASTINGS–MURTAGH, Daniel P. Murtagh, E.A.L. Employees Coalition Acquisition Corp., an Illinois Corporation, Charles E. Bryan, Robert V. Callahan, and Larry Schulte, Plaintiffs,

v.

TEXAS AIR CORPORATION, a Delaware corporation, Frank Lorenzo, Philip Bakes, Frank Borman, Joseph B. Leonard, Wayne A. Yeoman, Harry Hood Bassett, Peter O. Crisp, James A. Elkins, Jr., Karl Eller, John T. Fallon, Robert D. Lund, Enrique Madero, Thomas O. Paine, Wesley W. Posvar, Julian Scheer, Thomas R. Williams, David W. Wallace, Elmer L. Ward, Jr., Tac/Eal Acquisition, Inc., a Delaware corporation, Eastern Air Lines, Inc., a Delaware corporation, Defendants.

No. 86–2328–Civ.

United States District Court,
S.D. Florida,
Miami Division.

Nov. 24, 1986.

George H. Tucker, Miami, Fla., for plaintiffs.

Greenberg, Traurig, Askew, Hoffman, Lipoff, Rosen & Quentel P.A., Miami, Fla., for defendants.

## OPINION AND ORDER DENYING EMERGENCY APPLICATION FOR INJUNCTION

JAMES LAWRENCE KING, Chief Judge.

On November 10, 1985, this suit was brought by five individuals, derivatively on behalf of Eastern Air Lines, Inc., and by an employees' acquisition corporation, on its own behalf. The plaintiffs challenge a merger agreement between Eastern and Texas Air Corp. and allege violations of the Securities and Exchange Act. Plaintiffs Hastings-Murtagh and Murtagh are shareholders; plaintiffs Bryan, Callahan and Schulte are union leaders and Eastern employees as well as shareholders, and plaintiff E.A.L. Employees Coalition Acquisition Corp. is a corporation formed by the Eastern employees' unions to facilitate their attempted acquisition of the airline.

Named as defendants are: Texas Air; Eastern; TAC/EAL Acquisition Inc., a Texas Air subsidiary formed for the purpose of acquiring Eastern; Frank Lorenzo, Texas Air chairman of the board and chief executive officer, who was elected Oct. 17, 1986, to the Eastern board; Philip Bakes, who was elected president and chief operating officer, as well as director, of Eastern on Oct. 17, 1986; Frank Borman, former Eastern chief executive officer, director

and chairman of the board; Joseph B. Leonard, who has served as Eastern's president, chief operating officer, and acting chief executive officer, and as a director; Wayne A. Yeoman, a former director and former senior vice president of Eastern; and thirteen other Eastern directors who voted to accept the Texas Air offer.

It is perhaps as important to define what this case does not involve as it is to discuss the issues the court must decide for, as counsel have so carefully reminded the court, Eastern Air Lines presently employs 40,000 persons throughout a system involving the second largest trunk carrier in the free world, hundreds of millions of dollars in assets and 61 million shareholders. Of the 61 million shareholders (with an additional 10.9 million new shares recently issued to Texas Air) approximately 23 percent of the outstanding shares were owned by loyal employees of the company who have, either through direct purchase or wage concessions over the years, acquired this stock interest.

Counsel have further emphasized the fact that Eastern Air Lines is the largest corporate employer in South Florida with over 12,000 resident employees. The Plaintiffs argue that the future employment and welfare of all of these people may be dependant upon the outcome of this case.

These arguments overlook the fact that the court had no involvement with, nor any control over, the labor-management-union strife that has plagued this airline for years; the capital outlay and operational decisions of management over the years; or a series of financial crises that brought the airline to the brink of bankruptcy on Feb. 23, 1986.

Although invited to do so, the court conceives it to be neither its prerogative nor responsibility to pass judgment upon the decisions made over the years by either the management of the airline or the union leadership.

Counsel, in a similar vein, apparently would like the court to decide whether the merger contract with Texas Air is better (or worse) than the proposal made Nov. 20, 1986, by the employees coalition.

The court cannot, and should not, attempt to decide what is best for either the 40,000 employees of Eastern Air Lines, the labor unions, or indeed the continued corporate existence of Eastern Air Lines as an independent entity itself.

What the court must decide on this application for temporary injunctive relief to prevent the stockholders' meeting of Nov. 25, 1986, is whether or not the board of directors of Eastern Air Lines on Feb. 23, 1986 properly acted in accordance with their legal fiduciary responsibility to protect the interest of *all* the stockholders of Eastern Air Lines, Inc. by making the best business judgments for the future of the company, on what was then before them.

## PROCEDURAL BACKGROUND

Upon filing their Nov. 10 complaint, the plaintiffs also requested emergency consideration of their application for a preliminary injunction. The plaintiffs seek to delay a special stockholders' meeting scheduled for Nov. 25, 1986, (at which the proposed merger would be approved or disapproved) until this court makes a determination on the issues raised in this litigation. Issuance of a preliminary injunction would effectively halt the merger.

At a hearing held the day the case was filed, the court denied a motion for expedited discovery. It also established a schedule for the filing of memoranda on the issue of the requested preliminary injunction. The plaintiffs were to file their memorandum in support of their motion by Thursday, Nov. 13, 1986, and the defendants were to file their responsive memorandum by Monday, Nov. 17. The court subsequently granted to three defendants (Bassett, Elkins and Fallon) who had not been present at the Nov. 10 hearing, an extension of two days in which to respond.

After the court reviewed the voluminous documents that were filed, it held a hearing on Nov. 21, 1986, on the legal issues raised by the motion for preliminary injunction. Under ordinary circumstances, upon a mo-

tion for preliminary injunction the court would hold an evidentiary hearing to permit it to hear the testimony of witnesses and to evaluate the testimony and the credibility of the witnesses. This is the procedure generally followed in the United States District Court for the Southern District of Florida. Because the complaint and motion for preliminary injunction were filed just fifteen days before the date of the meeting sought to be enjoined, the court is precluded from following this traditional course of litigation, and must decide whether to grant a preliminary injunction on the basis of the parties' memoranda and exhibits and on the oral arguments presented at the Nov. 21 hearing.

Before addressing the merits of the motion for preliminary injunctive relief, the court feels it necessary to further address the severe limitations of the record before it. The plaintiffs bear the burden of developing a record sufficient to support their application for preliminary injunctive relief. Though the plaintiffs may suffer disadvantages from the inability to develop a full record in the extremely short period in which the court must rule on this motion, these disadvantages were caused by the plaintiffs themselves. As noted below, plaintiffs Bryan and Callahan are members of the board and were privy to the actions taken by the board. Hence, they were aware of the facts that form the basis for their challenge to the merger agreement in February, since they were present and voted at the meeting where the board approved the merger agreement.

Additionally, the defendants assert and the plaintiffs do not deny that a draft of the proxy solicitation statement was distributed to shareholders four months before the suit was filed, and as board members, Bryan and Callahan had access to the materials even earlier. Any allegation of wrongdoing stemming from the contents of the proxy statement could have been acted on well before the Nov. 10 filing of this suit.

The plaintiffs chose to file this suit just 15 days before the meeting they seek to enjoin, and they must bear whatever procedural disadvantages that flow from the time constraints they created. *Hecco Ventures v. Sea-Land Corp.*, No. 8486, slip op. (Del. Ch. May 19, 1986). [Available on WESTLAW, DE–CS database].

## PRELIMINARY INJUNCTION

To justify imposition of a preliminary injunction, the plaintiff must satisfy four prerequisites: "(1) substantial likelihood that plaintiff will prevail on the merits, (2) a substantial threat that plaintiff will suffer irreparable injury if the injunction is not granted, (3) that the threatened injury to plaintiff outweighs the threatened harm the injunction may do to the defendant, and (4) that granting the preliminary injunction will not disserve the public interest. Because a preliminary injunction is 'an extraordinary and drastic remedy,' its grant is the exception rather than the rule, and plaintiff must clearly carry the burden of persuasion." *Nartowicz v. Clayton County School District*, 736 F.2d 646, 647 (11th Cir.1984) (citations omitted); *quoting United States v. Lambert*, 695 F.2d 536, 539 (11th Cir.1983). A preliminary injunction should be granted only if the plaintiff carries the burden of showing each of these factors exists. The court finds that the plaintiffs have failed to show the existence of two of these factors: (a) a substantial likelihood of success on the merits, and (b) a potentially greater harm to the plaintiffs than to the defendants resulting from the possible dispositions of the application. Consequently, the court must deny the application for preliminary injunction.

## LIKELIHOOD OF SUCCESS

The complaint contains four counts. In Count I, the five individual plaintiffs allege that all of the defendants violated Securities and Exchange Act Section 14(a) (15 U.S.C. § 78n(a)) and S.E.C. Rule 14a–9 (17 C.F.R. § 240.14a–9) by distributing a false and misleading proxy solicitation statement. In Counts II and III, the same plaintiffs allege that all defendants except Eastern breached their fiduciary duties, wasted

corporate assets, and were grossly negligent. In Count IV, Plaintiff E.A.L. Employees Coalition Acquisition Corp. alleges that the same defendants, by engaging in the improper conduct described in Counts I through III, prevented it from bidding to acquire Eastern and having such a bid considered in good faith.

## BREACH OF FIDUCIARY DUTY

The record fails to support the plaintiffs' claims that they are substantially likely to succeed on any of these counts. At the Nov. 21 hearing, the plaintiffs stressed most heavily the claim for breach of fiduciary duty. To succeed on that claim, the plaintiffs must demonstrate that the defendants either failed to act in good faith to do what they thought was in the best interest of the stockholders, acted in their own self interest, or were grossly negligent. Upon the record now before the court, the plaintiffs have failed to make this showing. Rather, the record supports a finding that the directors prudently considered Eastern's financial condition as of Feb. 23 and 24, 1986, and acted on the basis of all relevant and available information. The court does not mean to indicate that such a finding would necessarily be made following introduction of additional evidence that the plaintiffs might provide at a later date. The court must decide whether to grant a preliminary injunction, however, on the basis of the record currently before it.

Further, the court notes that the plaintiffs allege breach of fiduciary duty on behalf of all stockholders. Therefore, in considering this claim, the court must consider the duty of the directors to all stockholders, and not any duties that the board may have to the plaintiffs as employees or union members.

■ *Self interest.* The plaintiffs allege, among other things, that the directors breached their fiduciary interest by acting in their own self-interest. The record does not bear this out. As the defendants note, the substantial majority of the board was comprised of "outside directors," i.e., directors who are associated with Eastern only as directors, and not as officers, employees, union representatives, or in any other additional capacity. Of twenty members present at the Feb. 23 meeting, three —Borman, Leonard and Yeoman—were management directors. Borman did not vote on the merger proposal. Two of the board members, Bryan and Callahan, represented unions. Two other directors were nominated by ALPA, the pilots' union, and by Eastern's non-union employees. The remaining thirteen directors were outside directors, and each of them voted to accept the merger proposal.

The outside directors stood to gain nothing from the disputed golden parachute provisions and they were not officers or employees of Eastern seeking to entrench themselves. Moreover, the record does not support the allegation that these directors voted to approve the Texas Air merger because of loyalty to the management directors. It is clear that even if the plaintiffs could prove that the two voting management directors cast their votes to approve the merger in order to further their own interests, the result would be the same, even if those votes were voided. The merger agreement was approved by a vote of fifteen to four.

It is suggested by the plaintiffs that the directors, including the outside directors, supported the merger only because Texas Air agreed to indemnify them for $35 million against liability arising from the merger. The parties contest whether the directors considered the indemnification important. Regardless of whether the directors sought indemnity or whether it was an unimportant term offered by Texas Air, the court finds that the directors did not act improperly in their own self interest in accepting the agreement with the indemnity provision. Indemnification put nothing in the directors' pockets. By itself, it does not act as an inducement to the directors to accept the merger. Indemnification merely protects the directors in the event that the merger is successfully challenged. It provides no gain; it only protects against loss.

*Lock-up and no-shop provisions.* The plaintiffs also challenge the lock-up and no-shop provisions of the merger agreement, claiming that those provisions harmed the stockholders by precluding the employees from tendering a superior bid. The effect of these provisions was to prevent any other potential acquiror from obtaining enough stock to obtain control of Eastern and to prevent the board from soliciting any other bids. Texas Air gave the board of directors 48 hours to make a decision on its offer to buy Eastern Air Lines and insisted that the board approve these two provisions.

The plaintiffs argue that the lock-up and no-shop provisions are invalid under Delaware law. A review of Delaware law shows that such provisions are not void *per se. Revlon, Inc. v. MacAndrews & Forbes Holdings, Inc.,* 506 A.2d 173 (Del.1985); *Thompson v. Enstar Corp.,* 509 A.2d 578 (Del. Ch. 1984). Rather, such provisions are impermissible only if they are adopted in a situation where there is a live auction with competing bidders. Where lock-up and no-shop provisions were used to encourage a bidder to submit an offer, as distinguished from precluding bidders in an active auction, they have been upheld. *Thompson.* The plaintiffs admit that neither the Eastern employees nor anyone else had a competing proposal on the table when the directors accepted the lock-up and no-shop provisions required by Texas Air.

The plaintiffs argue instead that the disputed provisions were invalid because then-Eastern president Frank Borman precluded the employees from making a competing bid by acting in secrecy in seeking Texas Air's bid. They suggest, further, that the board had an obligation to wait for an indefinite time to permit the employees to construct a proposal and arrange financing for a bid. The record does not support the claim that the board prevented the employees from making a bid; nor have the plaintiffs cited any legal authority that obligates a board of directors to jeopardize one bid in order to give a group of employees or anyone else an indefinite amount of time in which to develop and finance an acquisition proposal.

As early as September 1985, the board of directors discussed the severe losses Eastern had suffered in the previous months and years and decided it had only three options: (a) obtain wage reductions from its three unions; (b) sell the airline as a whole; or (c) file for bankruptcy under Chapter 11 (Bassett affid. at 3). The additional option of selling the airline piecemeal was later raised and rejected due to the length of time it would take. The board also chose not to pursue the option of filing under Chapter 11.

In November 1985, Eastern's lenders required that Eastern obtain wage reductions from all three of its unions by February 25, 1986, under threat of being forced into default. In September 1985, Frank Borman had begun contacting other airlines and diversified companies, including Texaco, Hilton, Unocal, Marriott, US Air, TWA, Pan American, and Northwest, to determine if they would be interested in any circumstances in acquiring Eastern if it became available. He reported to the board that he was making these inquiries, but did not solicit offers. The only one expressing any interest in buying Eastern Airlines was Defendant Frank Loranzo of Texas Air. The unions expressed an interest in having its members purchase stock, but disclaimed any interest in acquiring the company. Any such interest was expressly disclaimed in a Jan. 31, 1986 Schedule 13D filing with the Securities and Exchange Commission.

The unions were in a position to know just what was happening while the board was discussing its options and when Frank Borman was trying to determine if there were any potential purchasers for the airline. As noted above, Borman told the board in September 1985 that he had spoken to potential acquirors. The prospect of merger was again discussed at the Feb. 21 board of directors meeting. The directors included two union leaders, Charles Bryan and Robert Callahan, as well as two members appointed by labor interests. On Feb.

7, Borman informed the board that Texas Air was a potential acquiror. The board authorized him to contact Mr. Lorenzo and institute submission of an offer. Mr. Borman did so and after the Texas Air offer was made, told the unions about it on Feb. 22. At that time Borman sought wage concessions from the union leaders as an alternative to merger. Two of the unions, ALPA and TWU, indicated a willingness to agree to the necessary concessions. IAM refused to extend any concessions except on the condition that Borman be replaced (Minutes of Feb. 23 board meeting). The board refused to accept that condition because they viewed it as an improper delegation to the union of the power to choose officers (Bassett affid. at 14).

Still, the plaintiffs argue that the available time between learning that the airline was for sale and the time the merger plan was considered and accepted was too short for it to arrange a competing bid. As noted above, they have failed to provide any authority for the theory that Eastern was obligated to give its employees special consideration and help in arranging a competing bid. On the contrary, in *Thompson v. Enstar*, 509 A.2d 578 (Del. Ch. 1984), the court held that an expression of interest in acquiring a corporation that is unsupported by a viable proposal is insufficient to preclude acceptance of lock-up and no-shop provisions, even if they expected another bid to materialize within a few days.

The validity of the lock-up and no-shop provisions is reviewable only in light of the circumstances that existed and were known to the directors at the time they were adopted. Subsequent events cannot be taken into consideration. Thus, any expressions of interest in acquiring Eastern or any proposals for such an acquisition tendered after the Texas Air merger were approved are inconsequential for the purposes of determining if Eastern's directors breached their duty of care in approving the Texas Air merger. *Thompson v. Enstar*. The lock-up and no-shop provisions did not improperly preclude consideration of any employee bid.

Having concluded that the board neither used the lock-up and no-shop provisions to avoid considering a pending proposal nor acted in secrecy to thwart the submission of an opposing bid before the provisions took effect, the Court finds that the directors appear to have acted prudently and in good faith in accepting those provisions. Given the crisis that the directors perceived, (see *supra*) the lack of options available to the board, and Texas Air's insistence on the protection provided by precluding subsequent bids, the record indicates that the directors believed they were acting in the stockholders' best interest in accepting the lock-in and no-shop terms. It was reasonable for them to believe that the airline was financially at risk, and that merger with Texas Air was the best option available. Additionally, the lock-up and no-shop provisions appear to have resulted from arms-length negotiation. In return for accepting those terms, the directors extracted a lock-in provision from Texas Air which obligated Texas Air to perform under the agreement even if Eastern filed for bankruptcy or developed labor problems before the transaction was completed. The directors' acceptance of the lock-in and no-shop protections was consistent with the doctrine that such provisions are valid if they serve to attract a bidder. *Revlon, Inc. v. MacAndrews & Forbes Holdings*, 506 A.2d 173 (Del.1985). Additionally, four independent banking firms have stated that the Texas Air offer represents fair value for the Eastern stockholders.

Where the directors neither act in their own self interest or otherwise breach their fiduciary duties, Delaware law mandates the court defer to their judgment, and the presumption arises that the directors exercised their business judgment in good faith. *Smith v. Van Gorkom*, 488 A.2d 858 (Del. 1985). Under the business judgment rule, directors will be held liable only if they are grossly negligent. *Id.* The plaintiffs have not shown a likelihood that they will succeed in showing the directors either breached their fiduciary duties or were grossly

negligent in accepting the lock-up and no-shop provisions of the Texas Air merger agreement. The same conclusion applies to the claim for waste of corporate assets.

■ Nor have the plaintiffs developed a record showing that it is likely that the defendants will be found liable for violation of Securities Exchange Act Section 14(a) and Rule 14-a9 promulgated thereunder. A review of the record reveals no violation of the requirement of a full and complete disclosure of all material information necessary to the stockholder. *Lynch v. Vickers Energy Corp.*, 383 A.2d 278 (Del.1978). It follows that plaintiff E.A.L. Employees Coalition Acquisition Corp. is not substantially likely to succeed on Count IV, which is dependant on the preceeding three counts.

## BALANCE OF THE HARMS

■ As an additional ground for denying the motion for preliminary injunction, the court finds that the harm Eastern Air Lines would suffer if the preliminary injunction were granted substantially outweighs the harm that will befall the plaintiffs because this relief is being denied.

The plaintiffs claim that they will be irreparably harmed in four respects if the preliminary injunction is denied: (1) Eastern shareholders will be denied their fundamental right to approve or disapprove the Texas Air merger; (2) other potential bidders will continue to be precluded from competing on a fair and equal basis for control of Eastern; (3) Eastern shareholders will be denied the opportunity to obtain adequate consideration for their shares, and (4) Eastern shareholders will have inadequate information upon which to base their vote on the Texas Air proposal. In reality, the record indicates that the shareholders (as distinguished from the unions or employees) will suffer little or no harm from denial of the preliminary injunction.

Regarding the first and fourth claims above, the court has found that the proxy solicitation statement presents an accurate and complete description of the Texas Air merger agreement. Moreover, the plaintiffs concede that unless the merger agreement is voided, the contents of the proxy solicitation statement could have no effect, because Texas Air controls a majority of the Eastern shares. Even if all proxy votes were cast against the merger, the merger would go through. The right to approve or disapprove a merger exists only to the extent that no one else has control of enough stock to pre-determine the result. Because the shareholder vote will favor the merger regardless of the proxy statement's contents, no harm arises from the contents of the statement.

Regarding the second claim above, other bids could be permitted at this late date only if the lock-up and no-shop provisions of the merger agreement were voided. As discussed above, this result is unlikely. While the plaintiffs may perceive this to be harmful to them, it is the consequence of a legally permissible agreement. Moreover, the most recent proposal submitted by the E.A.L. Employees Coalition Acquisition Corp. is rendered less than certain by contingencies conditions and delay. The proposal is contingent upon substantial concessions being approved by the membership of Eastern's unions. The record to date fails to show that the unions have approved these concessions. Additionally, while the employees' investment banker opines that an acquisition by the employees is financeable, it does not say that financing is certain. Moreover, the investment banker estimates that it would take 120 days to arrange financing. As long as the plaintiff cannot offer a proposal free of problematic contingencies, it cannot be harmed by a contract provision preventing its submission of a proposal.

Furthermore, if the merger is found to be unlawful after it is consummated, the merger could be judicially unwound if the law required that action. *Equity Group Holdings v. DMG, Inc.* 576 F.Supp. 1197 (S.D.Fla.1983); *citing SEC v. National Securities, Inc.*, 393 U.S. 453, 89 S.Ct. 564, 21 L.Ed.2d 668 (1969).

Finally, regarding the third claim above, if the shareholders are deprived of an adequate consideration for their shares, they may seek damages in an action at law pursuant to 8 Del.C. § 262.

While the harm the plaintiffs will suffer from the denial of the preliminary injunction is not minimal, the harm that Eastern Air Lines would suffer if it were granted is immense. It is undisputed that bank commitments of over a 100 million dollars to Eastern, to finance three 757 aircraft, was withdrawn since this suit was filed. The defendants allege that the loss was due to the plaintiffs' challenge to the Texas Air merger. Additionally, the plaintiffs stand to lose a 500 million dollar loan commitment if the Texas Air merger has not been approved by the shareholders prior to Dec. 15. Eastern alleges that other financial losses will accrue to it if the Nov. 25 meeting is delayed, including tax losses and the cost of distributing amendments to the proxy solicitation statement should other relevant developments occur before the meeting. The defendants have stated that each distribution of proxy amendments costs about $600,000.

Finally, if the shareholders have not approved the Texas Air merger by Dec. 31, 1986, Texas Air will no longer be bound by the merger agreement. Considering the contingent nature of the employees' proposal, the history of the unions' refusal to grant further concessions, and the financial crisis that precipitated the Texas Air merger agreement, loss of the Texas Air proposal could result in the ruin of Eastern Air Lines. Such a result would be disastrous not only to the corporate entity, but also to the shareholders represented by five of the plaintiffs here and to Eastern's employees and unions.

The court realizes that Eastern's unions and employees are legitimately concerned with the future of the airline and with the effect the Texas Air merger could have for them as employees, union members and shareholders. Though the court deeply sympathizes with the plaintiffs and with the people they represent, it would be improper to grant a preliminary injunction on the record in this case.

### AVAILABILITY OF APPEAL

Due to the importance of these issues, the avenues of appeal available to the parties should be considered. The parties should direct their attention to 28 U.S.C. § 1292. This provision grants the Court of Appeals jurisdiction for the appeal of an interlocutory order that denies an injunction. 28 U.S.C. § 1292(a)(1). Accordingly, this Order denying the plaintiff's petition for an injunction is directly appealable. *Doe v. Charleston Area Medical Center, Inc.*, 529 F.2d 638 (4th Cir.1975).

To assist the parties should they decide to immediately appeal, the Clerk of the Court is ordered to prepare the record, including the transcript of the hearing held November 21, 1986, and have it available for transmittal to the Clerk of the Court of Appeals by 5:00 P.M. today.

Accordingly, upon the plaintiffs' motion and the memoranda of the parties, and upon the court being otherwise fully informed in the premises, it is

ORDERED and ADJUDGED that the motion for preliminary injunction be, and the same is, DENIED.