[DO NOT PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

_____

No. 25-10113

Non-Argument Calendar

_____

YAHZUR A. YOSEPH,

                                        Plaintiff-Appellant,

*versus*

SECRETARY, FLORIDA DEPARTMENT
OF CORRECTIONS,
WARDEN,
JOHN DUMAS,
Senior Chaplain,

                                        Defendants-Appellees.

_____

Appeal from the United States District Court
for the Northern District of Florida
D.C. Docket No. 1:24-cv-00137-AW-ZCB

_____

Before JILL PRYOR, BRANCH, and BRASHER, Circuit Judges.

PER CURIAM:

Yahzur Yo'Seph,[1] a Florida prisoner and practicing Muslim, appeals the district court's denial of his motion for a preliminary injunction in his *pro se* civil suit against the Secretary of the Florida Department of Corrections, Ricky Dixon,[2] under 42 U.S.C. § 1983, challenging the Florida Department of Corrections' ("FDOC") grooming policy, which prohibits inmates from growing a beard over a half inch in length. On appeal, he argues that the district court erred in concluding that he could not show irreparable harm due to his delay in filing suit, and the district court abused its discretion in failing to construe his *pro se* motions for extension of time to file a reply as motions for extension of time to file objections to the magistrate judge's report and recommendation ("R&R"). He maintains that he met all the requirements for a

---

[1] The parties include an apostrophe in Yo'Seph's name, and we adopt this spelling convention as well.

[2] Yo'Seph also sued the Warden of his prison and the Senior Chaplain, but he later voluntarily dismissed all claims against them.

preliminary injunction and that one should issue. Alternatively, he maintains that, at a minimum, his case should be remanded for the district court to consider his evidence that he did not delay in filing suit. After careful review, we affirm.

## I.     Background

On August 2, 2024, Yo'Seph, proceeding *pro se*, filed the underlying complaint.[3] He alleged that on May 27, 2024, he sent a request to his prison's Chaplin, informing him that Yo'Seph's Islamic faith required him to trim his mustache and allow his beard to grow freely and requesting assistance in obtaining a religious exemption to the FDOC's grooming policy, which permits inmates to grow and maintain only a half-inch beard. According to Yo'Seph, he received a reply to his request that simply recited the grooming policy. Yo'Seph alleged that he then filed an informal grievance with "security" explaining that the grooming policy placed a "substantial burden" on his Islamic faith. He again received a response that quoted the same grooming policy. On June 14, 2024, he filed a formal grievance with the Warden, requesting a religious exemption from the policy, and again received the same reply. Yo'Seph alleged that he appealed the denial of his grievances to the Secretary of the FDOC, but his

---

[3] Consistent with the prison mailbox rule, this opinion utilizes the dates that Yo'Seph provided his documents to prison officials for filing. *See Daniels v. United States*, 809 F.3d 588, 589 (11th Cir. 2015) (explaining that, under the prison mailbox rule, "a *pro se* prisoner's court filing is deemed filed on the date it is delivered to prison authorities for mailing" (quotations omitted)).

appeal was denied.  According to Yo'Seph, having fully exhausted his administrative remedies, he filed the present § 1983 complaint, alleging that the grooming policy violates the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc *et seq*., and the First Amendment.

Over a month later, Yo'Seph filed a motion for a preliminary injunction, seeking to enjoin enforcement of the grooming policy against him pending a disposition in his case.  He alleged that the grooming policy substantially burdened his ability to exercise his religion and caused him "immediate and irreparable injury, loss and damage."

At the time Yo'Seph filed his motion, the named defendants counsel had not yet entered an appearance, and a magistrate judge ordered the FDOC's Office of General Counsel to file a response even though the FDOC was not a named party.[4]

The FDOC filed a response pursuant to the magistrate judge's order, noting that it was neither a party to the suit nor did it consent to being a party.  The FDOC alleged that Yo'Seph could not show that he was irreparably harmed because the grooming policy had been in place since August 2016 and he had identified as Muslim since at least May 19, 2020, but he had not filed suit until

---

[4] Yo'Seph named Ricky Dixon, Secretary of the FDOC in his official capacity as a party, but he did not name the FDOC itself.

25-10113                Opinion of the Court                5

August 2024.[5]    The FDOC alleged that this four-year delay necessarily undermined any finding of irreparable harm. Additionally, the FDOC asserted that Yo'Seph failed to satisfy the other requirements for a preliminary injunction.[6]

On October 30, 2024, a magistrate judge issued a R&R, recommending that Yo'Seph's motion for a preliminary injunction be denied because he could not show irreparable harm given his own delay in filing suit. The magistrate judge noted that Yo'Seph "had not provided a satisfactory reason for [the] lengthy delay" in filing suit, and that in cases involving similar delays, courts had denied preliminary injunctive relief. The magistrate judge determined that the failure to show an irreparable injury alone warranted denial of the motion and did not address the other factors necessary for preliminary injunctive relief. Finally, the magistrate judge explained that the parties had 14 days to file objections to the R&R and that the failure to object would waive the right to challenge the unobjected-to factual or legal conclusions on appeal.

---

[5] The FDOC attached an exhibit to its response that supported its factual statements that Yo'Seph had identified as a Muslim since at least May 19, 2020.

[6] To obtain a preliminary injunction, a movant must establish four requirements: (1) a "substantial likelihood of success on the merits," (2) "irreparable injury will be suffered unless the injunction issues," (3) "the threatened injury to the movant[s] outweighs whatever damage the proposed injunction may cause the opposing part[ies]," and (4) "if issued, the injunction would not be adverse to the public interest." *Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000) (en banc).

A week later, on November 7, 2024, Yo'Seph filed a motion seeking a 20-day extension of time to file a reply to the FDOC's response to the motion for a preliminary injunction.  In support, he asserted that (1) he had limited access to the law library; (2) he was "a layman to the law" and needed assistance from "inmate law clerks in order to draft up a response" in accordance with the court rules and procedures; and (3) he "ha[d] merits on his claims and can show [the] court on his reply to the Defendants' response." Yo'Seph did not mention the R&R, the irreparable harm ruling, or anything about the alleged delay in filing the underlying complaint.

Approximately a week later, the district court denied as moot the motion for extension of time because the R&R had already issued and "the Local Rules [did] not allow replies in support of a motion except in 'extraordinary circumstances' and after 'obtaining leave from the Court.'" (citing N.D. Fla. Loc. R. 7.1(I)).[7]

Thereafter, on December 9, 2024, the district court adopted the R&R, noted that Yo'Seph had not filed any objections, and denied Yo'Seph's motion for a preliminary injunction.  The district court also stated in passing, without further discussion, that "it

---

[7] Two days later, on November 17, 2024, apparently unaware of the district court's order denying the motion for extension of time as moot, Yo'Seph refiled the same motion for an extension of time, explaining that he had previously attempted to file it on November 7, 2024, but it had been returned to him by prison authorities because of an error in his return address.  On November 25, 2024, a magistrate judge denied this second motion as moot, citing the district court's previous order.

25-10113                Opinion of the Court                7

[was] quite unlikely that Yoseph ha[d] shown a substantial likelihood of success on the merits based on the record before the court." Yo'Seph timely appealed.[8]

## II.  Discussion

Yo'Seph argues that (1) the district court erred in failing to construe his *pro se* motions for extension of time to file a reply as motions for extension of time to file objections to the R&R, and he contends that he has evidence which would have shown that he did not delay in filing suit; and (2) the district court erred in concluding that he could not show irreparable harm due to his delay in filing suit.[9]  We address each argument in turn.

### A. *The motions for extension of time to file a reply*

Yo'Seph argues that, given his *pro se* status, the district court should have construed his requests for an extension to time to file a reply to the FDOC's response as a request for an extension of time to file objections to the R&R.  He maintains that he possessed evidence that would have established that he did not delay in filing suit because the grooming policy was not enforced against Yo'Seph until May 2024, and he subsequently promptly filed suit in August 2024.[10]  He asserts that, at a minimum, his case should be remanded

---

[8] Although Yo'Seph proceeded *pro se* below, he has counsel on appeal.

[9] He also argues that the other requirements for a preliminary injunction were satisfied.  Because we resolve this case on the irreparable harm factor, we do not address Yo'Seph's arguments concerning the other factors.

[10] Yo'Seph's counsel urges us to consider an undated picture that Yo'Seph attached as an "exhibit" to his notice of appeal that purportedly shows him in

for the district court to consider this new information as part of its irreparable harm analysis.

"*Pro se* pleadings are held to a less stringent standard than pleadings drafted by attorneys and . . . [are] liberally construed." *Tannenbaum v. United States*, 148 F.3d 1262, 1263 (11th Cir. 1998). "Federal courts have long recognized that they have an obligation to look behind the label of a motion filed by a *pro se* inmate and determine whether the motion is, in effect, cognizable under a different remedial . . . framework." *United States v. Jordan*, 915 F.2d 622, 624–25 (11th Cir. 1990). In other words, a court should look beyond the labels used by a *pro se* prisoner and focus on the content and the substance of the filing. The Supreme Court has noted that the purpose of looking beyond the label a *pro se* party attaches to a pleading is "to avoid an unnecessary dismissal, to avoid inappropriately stringent application of formal labeling requirements, or to create a better correspondence between the substance of a *pro se* [pleading]'s claim and its underlying legal basis." *Castro v. United States*, 540 U.S. 375, 381–82 (2003) (citations omitted).

---

prison attire with a beard longer than a half inch. We do not consider this attachment because it was not part of the record before the district court. *See Selman v. Cobb County Sch. Dist.*, 449 F.3d 1320, 1332 (11th Cir. 2006) ("In deciding issues on appeal we consider only evidence that was part of the record before the district court."); *Shahar v. Bowers*, 120 F.3d 211, 212 n.1 (11th Cir. 1997) ("At no time when a case is on appeal is adding information to the record—information that was never before the district court—usual and favored by the law.").

Nevertheless, while courts should look beyond the labels used and liberally construe *pro se* pleadings, "this leniency does not give a court license to serve as *de facto* counsel for a party, or to rewrite an otherwise deficient pleading in order to sustain an action." *Campbell v. Air Jam., Ltd.*, 760 F.3d 1165, 1168–69 (11th Cir. 2014) (quotations omitted)).

Here, Yo'Seph argues that the district court should have looked beyond the label on his identical motions for extension of time to file a reply to the FDOC's response, and construed them as requests for extension of time to file objections to the R&R. However, nothing in the content or substance of the motions indicated that the motions related to the R&R. Rather, the motions referred explicitly to the FDOC's response to the motion for preliminary injunction, even citing the docket number for the response, and expressly sought permission to file a reply to that response in order to demonstrate the merits of Yo'Seph's claims. The motions never mentioned the R&R, the irreparable harm holding, or Yo'Seph's alleged delay in filing suit.

Moreover, the reasons Yo'Seph gave for his request for an extension of time to file a reply further demonstrate that his motion did not concern the R&R. Specifically, Yo'Seph asserted that he had "limit[ed] access to the law library," was "a layman to the law," and needed "assistance from inmate law clerks" to draft a proper reply. But Yo'Seph would not have needed access to the law library or inmate law clerks in order to object to the R&R and show that he did not delay in bringing suit. His alleged proof that there was

no delay in filing suit involved materials in his possession that purportedly showed that the FDOC allowed him to maintain a beard longer than a half inch prior to May 2024. Accordingly, based on the content and substance of the motions, we conclude that the district court did not err in failing to construe these motions as extensions of time to file objections to the R&R.[11] *See Campbell*, 760 F.3d at 1168–69 (explaining that, although we liberally construe *pro se* pleadings, the Court will not "serve as *de facto* counsel for a party" or "rewrite an otherwise deficient pleading in order to sustain an action" (quotations omitted)).

Finally, if Yoseph truly has new, compelling evidence that the district court should consider, there are other avenues for him to seek relief. A plaintiff may file a renewed request for a preliminary injunction based on new facts. *See United States v. Lambert*, 695 F.2d 536, 540 (11th Cir. 1983) ("In the meantime, a renewed request of the district court for a preliminary injunction can always be made if facts and circumstances change in the [plaintiff's] favor."). A plaintiff may also seek an expedited final judgment. "Often parties who appeal from a denial of a preliminary injunction fail to appreciate" that, "[i]f the energy spent on appealing a denial of a preliminary injunction were spent on

---

[11] Because we conclude that the district court did not err in failing to construe the motions as requests for an extension of time to object to the R&R and Yo'Seph did not file any objections, we conclude that no remand is necessary for the district court to reconsider its decision in light of Yo'Seph's evidence related to the delay in filing.

bringing a case to final resolution, it would seem that any continuing harm might thereby be mitigated." *Id.* at 540.

### B. *The Denial of the Preliminary Injunction Motion*

Yo'Seph argues that First Amendment rights enjoy special protection, and religious freedom is so paramount that any delay in filing suit should not factor into the irreparable harm analysis. Rather, he maintains that the law is clear that the loss of First Amendment rights, even for a minimal amount of time, is automatically an irreparable injury; that immediate injunctive relief "is clearly called for when such harms" occur; and that this type of First Amendment irreparable harm is simply not "undermined by procedural considerations like delay alone."

As noted previously, in order to obtain a preliminary injunction, a movant must establish four requirements: (1) a "substantial likelihood of success on the merits," (2) "irreparable injury will be suffered unless the injunction issues," (3) "the threatened injury to the movant[s] outweighs whatever damage the proposed injunction may cause the opposing part[ies]," and (4) "if issued, the injunction would not be adverse to the public interest." *Siegel*, 234 F.3d at 1176 (en banc). Failure to meet even of these requirements "dooms" any preliminary injunctive relief. *Wreal v. Amazon.com, Inc.*, 840 F.3d 1244, 1248 (11th Cir. 2016); *see also All Care Nursing Serv., Inc. v. Bethesda Mem'l Hosp.*, 887 F.2d 1535, 1537 (11th Cir. 1989) ("A preliminary injunction is an extraordinary and drastic remedy not to be granted unless the movant clearly establishes the burden of persuasion as to the four requisites."

(quotations omitted)).    "The chief function of a preliminary injunction is to preserve the status quo until the merits of the controversy can be fully and fairly adjudicated." *Ne. Fla. Chapter of Ass'n of Gen. Contractors of Am. v. City of Jacksonville, Fla.*, 896 F.2d 1283, 1284 (11th Cir. 1990).

Generally, "[w]e review the decision to deny a preliminary injunction for abuse of discretion.  In so doing, we review the findings of fact of the district court for clear error and legal conclusions *de novo*." *Scott v. Roberts*, 612 F.3d 1279, 1289 (citation omitted).  However, when as here, a party fails to object to an R&R, the party "waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions" provided that the party was given proper notice of the time period for objecting and the consequences for failing to object.  11th Cir. R. 3-1.  "In the absence of a proper objection, . . . [we] may review . . . for plain error in the interests of justice." *Id.*; *see also Evans v. Ga. Reg'l Hosp.*, 850 F.3d 1248, 1257 (11th Cir. 2017) ("[W]e will generally not review a magistrate judge's findings or recommendations if a party failed to object to those recommendations below."), *abrogated on other grounds by, Bostock v. Clayton Cnty.*, 590 U.S. 644 (2020).  "Review for plain error rarely applies in civil cases.  Even when it does, we require a greater showing of error than in criminal appeals." *Evans*, 850 F.3d at 1257 (quotations and citation omitted).

Plain error requires a showing that (1) an error occurred; (2) the error was plain; (3) it affected substantial rights; and (4) "not

correcting the error would seriously affect the fairness of the judicial proceeding." *Farley v. Nationwide Mut. Ins. Co.*, 197 F.3d 1322, 1329 (11th Cir. 1999). "Only in rare cases will a [district] court be reversed for plain error." *Id.* We assume without deciding that plain error review is necessary in the interests of justice given the religious issue at stake.[12]

Yo'Seph cannot show plain error here. "A showing of irreparable harm is the *sine qua non* of injunctive relief." *Ne. Fla. Chapter of the Ass'n of Gen. Contractors*, 896 F.2d at 1285 (quotation omitted). Yo'Seph is correct that the Supreme Court and this Court have held, as a general matter, "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *See Elrod v. Burns*, 427 U.S. 347, 373 (1976); *see also Honeyfund.com Inc. v. Governor*, 94 F.4th 1272, 1283 (11th Cir. 2024) (same); *KH Outdoor, LLC v. City of Trussville*, 458 F.3d 1261, 1271–72 (11th Cir. 2006) (same).

---

[12] Yo'Seph suggests that our review should be for abuse of discretion because it is not clear that he received the R&R with enough time to object, noting that, at the time, his mail was frequently allegedly "delayed by weeks." We disagree. There is no evidence that Yo'Seph did not receive the R&R in a timely fashion, and he does not assert otherwise. Rather, he only speculates that a delay possibly occurred. Moreover, we note that the R&R issued on October 30, 2024, and the district court did not adopt it until December 9, 2024, well beyond the specified 14-day objection period. Thus, even assuming his mail was delayed by a couple of weeks, the district court did not adopt the R&R for 41 days. Yet, Yo'Seph did not file any objections (timely or otherwise) or seek any other relief related to the R&R during that 41-day period or at any point thereafter. Accordingly, plain error, not abuse of discretion, review applies.

However, none of those cases also dealt with a delay in bringing suit. Outside of the First Amendment context, we have held that "[a] delay in seeking a preliminary injunction of even only a few months—though not necessarily fatal—militates against a finding of irreparable harm." *Wreal*, 840 F.3d at 1248. Here, based on the evidence before the district court, the delay in seeking an injunction was, at a minimum four years. The magistrate judge concluded that, because of this lengthy delay, Yo'Seph could not show that he would "suffer irreparable injury if a preliminary injunction or temporary restraining order [was] not granted." Although Yo'Seph contends that such a delay should not have been considered because First Amendment freedoms are involved, he has pointed to no case law from this Court or the Supreme Court holding that a delay in filing suit is an improper consideration when assessing irreparable harm where First Amendment rights are involved. Thus, he cannot show plain error. *See United States v. Lejarde-Rada*, 319 F.3d 1288, 1291 (11th Cir. 2003) ("[W]here the explicit language of a statute or rule does not specifically resolve an issue, there can be no plain error where there is no precedent from the Supreme Court or this Court directly resolving it."); *cf. Yakus v. United States*, 321 U.S. 414, 440 (1944) ("The award of an interlocutory injunction . . . has never been regarded as strictly a matter of right, even though irreparable injury may otherwise result to the plaintiff."). Accordingly, we conclude that the district court did not plainly err in finding that he did not establish irreparable harm, and his failure to establish irreparable harm is

25-10113                Opinion of the Court                15

fatal to his request for a preliminary injunction.  *Wreal*, 840 F.3d at 1248.  Consequently, we affirm.

**AFFIRMED.**