[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
Aug. 7, 2008
THOMAS K. KAHN
CLERK

_____

No. 06-15011

_____

D. C. Docket No. 04-60068-CV-JEM

SCOTT HIRSCH,

Plaintiff-Appellant,

versus

NOVA SOUTHEASTERN UNIVERSITY, INC.,
a Florida not for profit corporation,
a.k.a. Nova Southeastern Health
Professions Division, College of
Dental Medicine,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

**(August 7, 2008)**

Before TJOFLAT and BLACK, Circuit Judges, and EVANS,* District Judge.

PER CURIAM:

_____

* Honorable Orinda Evans, United States District Judge for the Northern District of Georgia, sitting by designation.

Scott Hirsch appeals the district court's denial of his Fed. R. Civ. P. 60(b)(3) motion seeking relief from judgment and a new trial in his lawsuit against Nova Southeastern University, Inc. (Nova). He also appeals his unsuccessful motion for sanctions. Both issues arise from certain discovery conduct by Nova that Hirsch alleges was improper. Hirsch, a former dental student at Nova, sued the school alleging they had discriminated against him based on his Attention Deficit Hyperactivity Disorder (ADHD). A jury found in favor of Nova. Hirsch then filed the Rule 60(b)(3) motion, arguing Nova engaged in misconduct when it misleadingly compiled a list of similarly situated students that Hirsch says was important to his theory at trial. He also sought sanctions. The district court denied both motions, and we affirm.

I.

Hirsch matriculated at Nova's college of dentistry in Fall 2001. He failed one course his first semester and was placed on probation; he then failed three more courses in Winter 2002. During this time, he was diagnosed with ADHD, although he had not yet told Nova. His parents informed Nova after learning of the failures in May 2002.

Because Hirsch demonstrated academic deficiency, he was referred to the Student Advancement Committee (SAC). According to the student handbook,

Hirsch would have been subject to possible dismissal for failing four or more courses in a single year. Instead, he was allowed to take re-examinations in each of the four courses. He passed three, but failed the fourth. The school required that he repeat his first year. After sailing through the fall semester of his repeat year, Hirsch failed two courses during the Winter Term, including Physiology, the class he could not pass from the previous year. This time the school dismissed Hirsch.

While all of this transpired, Hirsch and the school were discussing whether Hirsch was entitled to reasonable accommodations during his exams due to his ADHD. The details are unimportant for purposes of this appeal. Suffice to say Hirsch thought Nova treated him unfairly based on his ADHD, and so in January 2004 he filed suit under Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, alleging discrimination due to his disability.[1]

During discovery, Hirsch sought certain information relating to other students who had failed classes and appeared before the SAC. Nova resisted, and a magistrate order was issued on February 11, 2005 compelling discovery. It stated in relevant part:

---

[1] Hirsh also had a breach of contract claim against Nova, but Hirsch's counsel admitted at oral argument that the discovery response at issue here was relevant only to the Rehabilitation Act discrimination claim.

3

> For each student who is identified in Student Advancement Committee meeting minutes as having failed one or more dental courses from August 1, 2000 to date, [Nova] shall identify each student by first year of enrollment and current enrollment status, the course(s) failed and the semester of each course failure, and for each such failure provide the Committee's recommended action and actual disciplinary action taken by the Dean. [Nova] will protect the identity and gender of each student by assigning each student a letter or number identifier.

Nova complied and produced a chart with each student identified by year of enrollment, their status (enrolled, not enrolled, dismissed, or graduated), the courses failed, the SAC's recommendation (re-examination, probation, or dismissal), and the dean's ultimate action.

Hirsch says he hoped to use this information, which he dubs the "Comparator Data," to establish that similarly situated students were treated differently from him. At trial, he attempted to introduce the Comparator Data as evidence, but Nova objected. Nova said the court could not know whether the students in the data were truly similarly situated persons, because Hirsch had not asked for—and had not received—information on whether the students had taken and passed re-examinations. Such information would be essential to meaningfully compare them with Hirsch.

After hearing arguments from both sides, the district court kept the Comparator Data out, noting, "You got what you asked for, and [it was] within the

strictures of [the order compelling discovery].  But I'm not sure that what you got is particularly useful to you.  I don't know that it proves what you want to prove, and I don't know that you asked for the right thing."  The jury never saw the Comparator Data.

The judge did allow Hirsch to proffer what he would have produced had he been allowed to use the Comparator Data, and so Hirsch's counsel began questioning Dean Timothy Hottel about the data.  During this questioning, Hottel revealed that many of the "failures" identified on the chart were not actual failures in the common understanding of the word.  Hottel distinguished between failures in didactic courses and failures in clinical courses, and he said that a student could receive a "failure" in a clinical course for reasons beyond his or her control.  For example, if there were insufficient patients upon which students could complete their course work, a student would receive a failure in the course.  The student's failure would remain a failure until the clinical work was able to be completed.

But the Comparator Data Nova provided to Hirsch did not distinguish between failures in a didactic course and temporary "failures" in a clinical course—it listed them all as failures.  Hirsch's counsel pressed Hottel on this point:

5

Q. When you reviewed the answers to interrogatories and you saw the codes, why didn't you add a separate code for clinical holdbacks?

A. Because I didn't think of it.

Q. So your answer was incomplete?

A. Well, it's complete in the data. It's just the interpretation of what a failure is in my mind and your mind.

The trial continued, and the jury ultimately rejected Hirsch's claim. Specifically, the jury found Hirsch did not have a "disability" as defined by the Court's instructions.

Hirsch timely sought relief from judgment and sanctions against Nova based on its response to Hirsch's request for the Comparator Data. Hirsch argued Nova engaged in misconduct when it failed to distinguish between clinical "failures" and actual course failures in its discovery response. The district court denied Hirsch's motions, and Hirsch appeals.

## II.

Hirsch argues the district court abused its discretion in denying his Rule 60(b)(3) motion because Hottel essentially admitted Nova included misleading information in the chart; specifically, Nova failed to distinguish between technical clinical failures and actual failures. Hirsch says this behavior amounts to the sort of misconduct covered by the rule because a fair reading of the discovery order

6

would have required Nova to note the difference between genuine didactic course failures and technical clinical failures.

We review the denial of a Rule 60(b)(3) motion for relief from judgment for an abuse of discretion. *Cox Nuclear Pharmacy, Inc. v. CTI, Inc.*, 478 F.3d 1303, 1314 (11th Cir. 2007). Rule 60(b)(3) states: "On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons: . . . fraud . . . , misrepresentation, or misconduct by an opposing party . . . ." Fed. R. Civ. P. 60(b)(3). Put another way, to prevail under Rule 60(b)(3), the moving party must show by clear and convincing evidence that the adverse party obtained the verdict by fraud, misrepresentation or other misconduct. *Waddell v. Henry County Sheriff's Office*, 329 F.3d 1300, 1309 (11th Cir. 2003). In addition, the party must show the misconduct prevented him from fully and fairly presenting his case. *Id.* The failure to produce information called for by a discovery order can comprise the sort of "misconduct" contemplated by Rule 60(b)(3). *Rozier v. Ford Motor Co.*, 573 F.2d 1332, 1339 (5th Cir. 1978).[2] Therefore, the question is whether Nova's

___

[2] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981), this Court adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

7

response to the discovery order—which did not distinguish between actual failures and technical non-failure "failures"—was a violation of the order.

The exact language of the discovery order is excerpted above. To be sure, Nova denies it engaged in any wrongful conduct and asserts its response to the discovery order was complete and honest. But we can assume, without deciding, that the language obligated Nova to distinguish between genuine failures and temporary clinical failures. We can assume this because Hirsch's argument fails for two independent reasons.

First, the transcript suggests the district court refused to admit the Comparator Data because it did not contain information on whether the students successfully passed re-examinations. Nova cannot be blamed for that omission, because they were not asked to disclose that information. The order did require Nova to list any students who had failures and appeared before the SAC, and it required disclosure of the courses failed, the action recommended by the SAC, the dean's ultimate action, and the students' current status. Nowhere did the order call for re-examination data. Hirsch himself failed four courses and successfully re-examined three, so re-examination data would have been essential for any meaningful comparative purposes. Nova cannot be blamed for Hirsch's failure to ask for re-examination data.

8

Second, the jury rejected Hirsch's claim on a basis unrelated to the Comparator Data. The jury specifically found Hirsch had not established his ADHD constituted a "disability" under the law. No one disputes the Comparator Data is irrelevant to the question whether Hirsch's ADHD constituted a disability; the data would come into play only after Hirsch had proven a disability, when the data could then be used to show Nova discriminated against him. Thus, the jury never reached an issue where the absent Comparator Data would have been relevant to their decision. In other words, Hirsch would have had to prove a "disability" regardless of whether the data was responsive to his discovery request.

Hirsch reminds us that our inquiry is not one of outcome-determinativeness: "[Rule 60(b)(3)] does not require that the information withheld be of such nature as to alter the result of the case." *Rozier*, 573 F.2d at 1339 ("This subsection of the Rule is aimed at judgments which were unfairly obtained, not at those which are factually incorrect."). We do not quarrel with this proposition. But there was nothing unfair about Hirsch's unfavorable judgment; he simply did not prove to the jury he was disabled. The Comparator Data, even if disclosed exactly as Hirsch thinks he asked for it, would have been completely irrelevant to the question whether his ADHD constituted a disability. Hirsch "fully and fairly

9

present[ed] his case" on whether he was disabled, *see id.*, and he lost. The Comparator Data was irrelevant to this dispositive issue.

Although alteration of the result is not the touchstone of a Rule 60(b)(3) analysis, the moving party surely is obligated to demonstrate the relevance of the withheld evidence in light of the jury's explicit determination. *Cf. Rozier*, 573 F.2d at 1345 ("It is apparent . . . that the [withheld evidence] . . . might have been the catalyst for an entirely different approach to the case on a theory that the plaintiff, lacking the document, let die before it reached the jury."). Hirsch cannot show his approach to a threshold, dispositive issue was impacted in any way by Nova's disclosures of the Comparator Data. Therefore, Hirsch was not prevented from fully and fairly litigating his case, and he is not entitled to relief under Rule 60(b)(3).

## III.

Hirsch also argues he is entitled to monetary sanctions for Nova's abuse of discovery. We review the decision whether or not to award sanctions for an abuse of discretion. *Serra Chevrolet, Inc. v. General Motors Corp.*, 446 F.3d 1137, 1146-47 (11th Cir. 2006). Under Fed. R. Civ. P. 37(b)(2), if a discovery order is violated the court should impose monetary sanctions unless the conduct was substantially justified or "other circumstances" would make an award unjust. Fed.

10

R. Civ. P. 37(b)(2). In addition, Rule 37(c)(1) permits a court to impose monetary sanctions for failures to disclose or supplement prior disclosures. Fed. R. Civ. P. 37(c)(1). "Rule 37 sanctions are intended to prevent unfair prejudice to the litigants and insure the integrity of the discovery process." *Gratton v. Great Am. Commc'ns*, 178 F.3d 1373, 1374 (11th Cir. 1999). The district court adopted the magistrate judge's denial of Hirsch's motion for sanctions, which stated "defendant complied with its discovery obligations and plaintiff was not unfairly prejudiced by the alleged errors." We readily conclude neither holding was an abuse of discretion.

In part II, we assumed, without deciding, that Nova's conduct was a violation of the discovery order. Here we look more closely at the order, and we conclude that the district court did not abuse its discretion in finding Nova did not violate its discovery obligations. The order requires disclosure of "course(s) failed" and "each course failure," and does not explicitly require Nova to distinguish between genuine failures and technical failures in the clinical work. In light of Hottel's testimony that the school "[did not] consider any difference at the time the grades go out," we cannot say the district court abused its discretion in finding Nova met its discovery obligations.

11

Moreover, the district court did not abuse its discretion in finding Hirsch was not prejudiced by any perceived failures in Nova's discovery disclosures. For the reasons discussed *supra* part II, Hirsch's unfavorable verdict did not relate to any issue implicating the Comparator Data, and he failed to request information necessary for drawing meaningful comparisons. Therefore, the district court was well within its discretion to deny sanctions.

## IV.

The judgment of the district court is **AFFIRMED**.