[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 21-12801

_____

BENZO RUDNIKAS,

Plaintiff-Appellant,

*versus*

NOVA SOUTHEASTERN UNIVERSITY, INC.,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 1:19-cv-25148-JEM

_____

Before WILLIAM PRYOR, Chief Judge, ROSENBAUM, and MARCUS, Circuit Judges.

PER CURIAM:

Benzo Rudnikas, a law student at Nova Southeastern University, sought (and was denied) accommodations for his disability. He sued the school. While litigation was pending, Rudnikas was suspended for violating the Code of Conduct and then dismissed for falling below the required minimum grade-point average ("GPA"). He moved for a preliminary injunction to reverse his suspension and remove a failing grade, alleging that the school had retaliated against him for seeking accommodations and filing a lawsuit. The district court denied his motion. After a thorough review of the record and with the benefit of oral argument, we conclude that Rudnikas's expulsion does not moot his appeal and, finding no error in the district court's order, we affirm.

## I.    BACKGROUND

### A. Factual Background

Rudnikas enrolled in Nova Southeastern University College of Law ("NSU") as a part-time evening law student in Fall 2019. Rudnikas sought accommodations under the Americans with Disabilities Act (the "ADA"). When he didn't receive the accommodations he wanted, in December 2019, he sued NSU (pro se) for violating the Americans with Disabilities Act and the Rehabilitation Act by not giving him reasonable accommodations. In his lawsuit, Rudnikas sought declaratory relief, injunctive relief, and, under the

Rehabilitation Act, damages.  The district court set the deadline to file an amended complaint as July 6, 2020.

A quick tangent (which will become relevant later):  in January 2020, a friend of Rudnikas, who was also an NSU law student, remained in a classroom after class and had a phone call with a third person.  The class was recorded so those who couldn't attend in person could review the recording.  Because the recording continued after the class ended, the phone call was recorded, too.  A different NSU classmate, while reviewing the class recording, heard the phone conversation.  He shared the recording with some other classmates, and the group reported the call to NSU because they believed the content of the call violated the school's professionalism standards.  NSU investigated and generated a confidential report recommending that the student apologize to his classmates as a sanction (the "Confidential Report" or "Report").  Although NSU's Code of Conduct prohibited sharing the Report, the student shared the Report with Rudnikas.

During the summer of 2020, Rudnikas took a criminal-law course at NSU.  In June 2020, a political debate during class spilled into Rudnikas's section groupchat.[1]  During the discussion, Rudnikas posted screenshots of the Confidential Report into the chat.

---

[1] Rudnikas and his classmates used a WhatsApp groupchat to communicate with each other.

These screenshots included the names and testimony of the report-ing students.

On June 16, NSU opened investigations into both Rudnikas and his friend for sharing the Confidential Report. The friend met with NSU on July 1 and admitted responsibility for giving the Re-port to Rudnikas. NSU placed him on "Final Disciplinary Proba-tion" and, though he appealed, his sanction was affirmed on August 7, 2020.

Rudnikas took a different approach. NSU contacted Rudni-kas at least four times—on June 16, 19, 22, and then on July 10—to schedule a hearing. But Rudnikas didn't cooperate. So on July 10, NSU set Rudnikas's hearing for July 15 and warned him that the hearing would proceed without him if he failed to attend. Rudni-kas did not appear, and NSU found him responsible in absentia and suspended him until April 30, 2021. Rudnikas appealed the suspen-sion, which allowed him to finish the summer semester.

But just before the end-of-semester criminal-law exam—that is, four minutes before the exam period *ended*—Rudnikas asked the school to extend the exam period. By way of explanation, Rud-nikas conceded that he had "not had the opportunity to even look at [the criminal law exam] and [would] fail because of the insur-mountable time Nova and its attorneys have taken away from [him] in making [him] work on these pleadings and motions just to stay in law school despite knowing they were aiding and abetting a federal and state crime." Because Rudnikas didn't take the exam, he received a failing grade.

On August 7, NSU affirmed Rudnikas's suspension—in place until April 30, 2021—and, on August 26, removed him from classes. Under the terms of the suspension, Rudnikas was required to petition for reinstatement after the suspension was to be lifted in April 2021.

### B. *Motions for Preliminary Relief in the District Court*

Meanwhile, back in the district court, on September 2, 2020, Rudnikas filed three motions. *First*, he filed a motion entitled "Plaintiff's Emergency Motion for Temporary Restraining Order & Expedited Motion for Preliminary Injunction." In that filing, Rudnikas asked the district court to (1) reinstate him in classes and waive any absences as a result of his suspension; (2) remove his failing grade in his criminal-law course; (3) require NSU to not commit any further code-of-conduct investigations into him; and (4) require NSU to grade him on a pass/fail system for the rest of the district-court proceedings; give him copies of all his exams; and, if he failed an exam, provide him with the answer key and review the exam with the entire class. In support of this motion, Rudnikas asserted that NSU suspended him in retaliation for his filing of his disability-discrimination lawsuit. Because we later conclude that this motion is properly characterized as seeking a preliminary injunction, we refer to this motion as the "preliminary-injunction motion."

*Second*, Rudnikas moved to amend the scheduling order to allow him to file a second amended complaint (the "scheduling-

order motion").[2]  The deadline to amend the complaint had passed nearly two months earlier, on July 6.  But Rudnikas sought to excuse his failure to timely seek to amend by explaining that he had his amended complaint ready on that day, but he didn't have the exhibits prepared.  He said he "thought the best thing he could do to show diligence to this Court would be just to make sure everything was complete with exhibits even if it took him a couple of extra days."  But then, he continued, NSU dismissed him on July 15, and he spent the next few weeks appealing his suspension.  Rudnikas posited that he had good cause to amend the scheduling order because, while he was originally going to be only a few days late, his suspension—NSU's action—caused the delay.  During the delay, Rudnikas said, he discovered NSU had a history of discriminating against disabled people and lying to federal courts about doing so.

Rudnikas attached two complaints to his scheduling-order motion.  The first complaint was a proposed second amended complaint.  This complaint added details about other disability-discrimination lawsuits against NSU between 2000 and 2020.  It also sought more detailed injunctive and declaratory relief.

The second complaint was titled, "Proposed Verified Rule 15D Supplemental Complaint."  It incorporated Rudnikas's proposed second amended complaint.  It added factual details about

---

[2] This motion embedded other requests that Rudnikas either disclaimed or didn't appeal, so we don't discuss them further.

his friend's January 2020 phone call and the investigation into it, as well as the June 2020 investigation into Rudnikas and his friend. The second complaint also included a panoply of new contractual, statutory, and common-law claims, including, as relevant here, an ADA retaliation claim. Rudnikas alleged that NSU had suspended him in retaliation for his asking for accommodations and for his filing of the lawsuit.

*Third*, Rudnikas moved to admit in this action deposition testimony from earlier cases against NSU—*Hirsch v. Nova Southeastern. University, Inc.*, 289 F. App'x 364 (11th Cir. 2008), and *Redding v. Nova Southeastern University, Inc.*, 165 F. Supp. 3d 1274 (S.D. Fla. 2016).

While Rudnikas's three motions were pending, on September 10, NSU told Rudnikas that his GPA had fallen below the required minimum to continue and he would be academically dismissed from NSU. Rudnikas never petitioned for reinstatement.

Instead, in October 2020, Rudnikas retained counsel. The next month, a magistrate judge held an evidentiary hearing on Rudnikas's preliminary-injunction motion. Rudnikas admitted under oath that he had received notice of the investigation into him at least three times (on June 16, 19, and 22). But he said that NSU had locked him out of his email account in early July. As to his criminal-law exam, Rudnikas explained that he had not taken his online final exam because he "didn't think it was fair that if [he] took the exam and [NSU] affirmed [his] dismissal — [NSU] affirmed [his] dismissal, [NSU] would just change whatever grade [he] had

to failing.  So [he] told the administration that that was no way to study for an exam, and [he] asked them to reopen the exam."  For its part, NSU called an information-technology employee who testified that NSU hadn't locked Rudnikas out of his email account. And the school called an NSU College of Law administrator, who testified that, while she had investigated Rudnikas in June 2020, it was NSU's general administration (not its College of Law) that conducted the hearing and sanctioned Rudnikas.

Months after the hearing, Rudnikas asked the district court to take judicial notice that his friend was a non-disabled comparator who had committed the same misconduct—sharing the confidential report—but had been placed on probation, not suspended. According to Rudnikas, his friend's different treatment was evidence that NSU's explanation for his suspension was pretext for retaliation.

The magistrate judge recommended denying all Rudnikas's motions.  As to the preliminary-injunction motion, the magistrate judge recommended denying the requested relief because the issues identified—relating to Rudnikas's suspension—were outside the scope of the operative complaint (which related to Rudnikas's request for accommodation).  In the alternative, she continued, Rudnikas had not shown that his friend was a relevant comparator for ADA-retaliation purposes because Rudnikas—not his friend— had published the pictures, so their conduct was different.  As to Rudnikas's scheduling-order motion and his motion to admit testimony from other lawsuits, the magistrate judge recommended

denying them because the depositions of NSU employees in other cases—Rudnikas's reason for amending the scheduling order (and obviously the basis for his motion to admit testimony from other lawsuits)—were available to him well before the July deadline to amend, and his failure to review the depositions earlier did not constitute good cause. As to Rudnikas's motion for judicial notice, the magistrate judge recommended denying it because whether the friend was a comparator was irrelevant to the operative complaint, which didn't include an ADA retaliation claim.

Over Rudnikas's objection, the district court adopted the magistrate judge's recommendation in full. As to the preliminary-injunction motion, the district court said that Rudnikas's motion failed because it depended on facts not in the operative complaint, and even if the proposed complaints were considered, Rudnikas hadn't shown any basis to conclude that NSU's reason for suspending him was pretextual. The district court adopted the recommendations as to the other motions as untimely filed.

Rudnikas appealed the denial of each of these four motions.[3]

In this court, NSU moved to dismiss the appeal on two jurisdictional grounds: (1) as moot because Rudnikas was no longer a

---

[3] Rudnikas also moved to invoke judicial estoppel against NSU, which the district court denied. While Rudnikas appealed that denial, a motions panel of this Court dismissed the portion of this appeal as to that motion, and we don't consider it further.

student at NSU, and (2) for lack of appellate jurisdiction because none of the orders were interlocutorily appealable. We denied the motion to dismiss as to the preliminary-injunction motion and carried the rest of the motion with the case.

## II.    STANDARD OF REVIEW

"The grant or denial of a preliminary injunction is a decision within the sound discretion of the district court." *United States v. Lambert*, 695 F.2d 536, 539 (11th Cir. 1983). We review for the abuse of that discretion. *Id.*

## III.    DISCUSSION

We divide our discussion into two parts. *First*, we examine our jurisdiction, specifically the following: (1) whether there is an interlocutorily appealable order; (2) if so, over which orders we should exercise pendent appellate jurisdiction; and (3) whether this appeal is moot. We conclude that we have appellate jurisdiction, that pendent appellate jurisdiction is not appropriate in this case, and that this appeal is not moot. *Second*, we affirm the district court's denial of the motion for a preliminary injunction.

### A. Jurisdiction

#### i.    Interlocutory Jurisdiction

Our motions panel concluded—and we agree—that Rudnikas's preliminary-injunction motion is properly characterized as one for a preliminary injunction and that we have appellate jurisdiction to review its denial. *See* 28 U.S.C. § 1292(a)(1).

Rudnikas entitled his motion "Plaintiff's Emergency Motion for Temporary Restraining Order & Expedited Motion for Preliminary Injunction." While the title of his motion is ambiguous, we look at the substance, not the title, to determine the character of such a motion. *AT&T Broadband v. Tech Commc'ns, Inc.*, 381 F.3d 1309, 1314 (11th Cir. 2004). "An order granting a [temporary restraining order] may be appealable as an order granting a preliminary injunction when three conditions are satisfied: (1) the duration of the relief sought or granted exceeds that allowed by a [temporary restraining order] ([fourteen] days), (2) the notice and hearing sought or afforded suggest that the relief sought was a preliminary injunction, and (3) the requested relief seeks to change the status quo." *Id.*

Here, Rudnikas wanted to change the status quo—he was suspended and wanted to be reinstated. He also wanted relief lasting longer than fourteen days—he wanted to be graded pass/fail for the rest of the district-court proceedings. NSU had notice, and the magistrate judge held an evidentiary hearing. We therefore agree that this motion is one for a preliminary injunction and not for a temporary restraining order. Accordingly, we have interlocutory appellate jurisdiction over its denial.

### ii.    Pendent Appellate Jurisdiction

Ordinarily, only certain orders are immediately appealable. We can exercise "pendent appellate jurisdiction" to review otherwise nonappealable orders if they are "'inextricably intertwined' with an appealable decision or if 'review of the former decision is

necessary to ensure meaningful review of the latter.'" *Hudson v. Hall*, 231 F.3d 1289, 1294 (11th Cir. 2000) (alterations adopted and citation omitted).

Pendent appellate jurisdiction over the other motions is not appropriate here. *First*, as to Rudnikas's motion for judicial notice and his scheduling-order motion, the district court assumed the facts in those motions were properly in the record when it decided Rudnikas's motion for a preliminary injunction. That is, while the district court denied Rudnikas's motion because the motion relied on facts outside the operative complaint, the district court also and independently denied the motion on the merits, taking into account the facts alleged in the denied motions to take judicial notice and to amend the scheduling order. For this reason, we don't need to separately review the denials of those other motions to review the preliminary-injunction ruling.

*Second*, as to Rudnikas's motion to admit testimony, we also don't need to exercise pendent appellate jurisdiction to decide this appeal. Rather, even if we assume without deciding that the district court erred in denying that motion, the contents of those depositions do not affect our analysis of the preliminary-injunction order on appeal.

In sum then, we review *only* the denial of the preliminary-injunction motion and not the denial of the other motions.

21-12801                Opinion of the Court                13

### iii.    Mootness

We also must establish whether this appeal is moot.[4]  We conclude that it is not.

"[T]he doctrine of mootness 'derives directly from the case-or-controversy limitation.'" *Carver Middle Sch. Gay-Straight All. v. Sch. Bd. of Lake Cnty.*, 842 F.3d 1324, 1330 (11th Cir. 2016) (quoting *Al Najjar v. Ashcroft*, 273 F.3d 1330, 1335 (11th Cir. 2001)).  "A case is moot when it no longer presents a live controversy with respect to which the court can give meaningful relief." *Ethredge v. Hail*, 996 F.2d 1173, 1175 (11th Cir. 1993).  When an appeal is moot, we lack jurisdiction and must dismiss it.  *Id.*

This appeal isn't moot.  In his motion for a preliminary injunction, Rudnikas asked the district court—among other things—to require NSU to "[r]emove the failing grade in [c]riminal [l]aw" and to reverse his suspension.  NSU does not contest that the district court has the power to issue such an order.

---

[4] There is a difference between a case as a whole being moot and an interlocutory appeal being moot. *See Vital Pharms., Inc. v. Alfieri*, 23 F.4th 1282, 1290 (11th Cir. 2022) ("To be clear, we hold only that the cross-appeal and portions of the appeal [of an expired preliminary injunction] are moot.  We do not hold that the entire case is moot.").  In the underlying case here, Rudnikas also seeks money damages, so, even if his appeal of the denial of his preliminary injunction were moot, his case wouldn't be moot.  *Id.* ("Vital's complaint requests money damages, and such claims, if at all plausible, ensure a live controversy in the district court." (alterations adopted & quotation marks omitted)).

Instead, NSU says that this demand cannot constitute meaningful relief because Rudnikas is no longer a student at NSU and hasn't petitioned for reinstatement. NSU also represented at oral argument that, even if we removed the failing grade, Rudnikas would remain suspended. *See* Oral Argument at 11:00–14:00.

We find this argument unavailing. Here, two barriers stand between Rudnikas and reinstatement at NSU: (1) his suspension and (2) his inadequate GPA. Taking them in reverse order, at oral argument, Rudnikas claimed to the court that, without the criminal-law exam grade, his GPA would satisfy NSU's minimum to be a student. *See* Oral Argument at 3:40–4:07. NSU agreed. *See* Oral Argument at 11:10–11:25. So an order from us removing Rudnikas's criminal-law-exam grade would negate the basis for his academic dismissal.

Rudnikas also seeks for his suspension to be overturned. In the context of a school suspension, the Seventh Circuit has explained that an appeal of a time-limited suspension becomes moot when it ends. *Osteen v. Henley*, 13 F.3d 221, 223 (7th Cir. 1993) ("More important, the expulsion was only for two years, and the two years are up, so that there is, at least as far as the record discloses, no obstacle to his being readmitted."). And that rule generally makes sense because, once a suspension is over, there is usually nothing else a court can do to provide relief. *Id. But cf. Doe v. Pulaski Cnty. Special Sch. Dist.*, 306 F.3d 616, 621 (8th Cir. 2002) (awarding relief to school district so that the school didn't have to purge the records of a graduated student); *Bird v. Lewis & Clark*

*Coll.*, 303 F.3d 1015, 1020 (9th Cir. 2002) (explaining that, to the extent that a student's grades impacted her chances of future employment or admission to graduate school, graduation didn't moot her claims).

But that general rule doesn't apply here.  Even though Rudnikas's suspension ended on April 30, 2021, NSU said at oral argument that, Rudnikas would *still* have to petition for reinstatement (assuming we removed his failing grade in his criminal-law class, thus negating the basis for his dismissal).  Oral Argument at 14:00–14:30.  But, on the other hand, if we reversed Rudnikas's Code of Conduct suspension, he would no longer have to petition for reinstatement.

In sum, Rudnikas faces two hurdles to taking classes at NSU: his Code of Conduct suspension and his sub-minimum GPA.  He asks us to reverse the suspension *and* erase a failing grade on his transcript, which would raise his GPA above the minimum and eliminate the basis for his dismissal.  So if we granted him the requested relief, Rudnikas would be reinstated.  And NSU's September 10 academic dismissal does not moot Rudnikas's September 2 motion for a preliminary injunction to erase the failing grade in his criminal-law course and overturn his suspension.

### B. *Merits*

Rudnikas argues that the district court erred in not granting a preliminary injunction.  We disagree.

"A district court may grant injunctive relief if the movant shows the following: (1) substantial likelihood of success on the merits; (2) irreparable injury will be suffered unless the injunction issues; (3) the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) if issued, the injunction would not be adverse to the public interest." *McDonald's Corp. v. Robertson*, 147 F.3d 1301, 1306 (11th Cir. 1998). We need only consider the first prong because Rudnikas hasn't shown a likelihood of success on the merits.

Rudnikas argues that he is entitled to a preliminary injunction based on an ADA retaliation claim. An ADA retaliation claim uses Title VII's standard for relief. *Stewart v. Happy Herman's Cheshire Bridge, Inc.*, 117 F.3d 1278, 1287 (11th Cir. 1997). First, the plaintiff must establish a prima facie case. *Id.* Once a prima facie case is established, "the burden then shifts to the defendant [] to come forward with legitimate non-discriminatory reasons for its actions that negate the inference of retaliation." *Id.* Finally, "[t]he plaintiff must then demonstrate that [he] will be able to establish at trial that the [defendant's] proffered non-discriminatory reasons are a pretextual ruse designed to mask retaliation." *Id.*

The plaintiff can show pretext by demonstrating "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in [the] proffered legitimate reasons for [the] actions that a reasonable factfinder could find them unworthy of credence." *Springer v. Convergys Customer Mgmt. Group Inc.*, 509 F.3d 1344, 1348 (11th Cir. 2007) (internal quotation marks and

citation omitted). A plaintiff must show both that the given reason is false *and* that the true reason was discrimination. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 511 (1993).

Here, the district court did not err in concluding that Rudnikas had not met his burden to show a substantial likelihood of success on his ADA retaliation claim because Rudnikas cannot establish that NSU's non-retaliatory reasons for its adverse actions—giving him a failing grade on his criminal-law exam or suspending him for violating the Code of Conduct—are pretextual. As to his criminal-law exam, Rudnikas admits that NSU gave him a failing grade because he did not take the exam. Rudnikas conceded that he had "not had the opportunity to even look at [the criminal exam]" and asked—four minutes before the deadline to complete the exam—for an extension. He points to no evidence in the record to support his conclusion that NSU's stated rationale (that it gave him a failing grade because he didn't take the exam) was false or—let alone "and"—a pretext for retaliation.[5]

---

[5] We don't consider Rudnikas's argument that he didn't take the exam because NSU had barred him from campus because Rudnikas made this claim for the first time at oral argument, and "[w]e do not consider arguments raised for the first time at oral argument." *Hernandez v. Plastipak Packaging, Inc.*, 15 F.4th 1321, 1330 (11th Cir. 2021). In any event, while Rudnikas relied on the July 15 letter suspending him as proof of the ban, he testified during the evidentiary hearing before the magistrate judge that the exam was online (so he didn't need to go to campus to take it), and he never mentioned being unable to take the exam in any of his contemporaneous emails. We likewise don't consider Rudnikas's argument that NSU violated its own procedures by

As to his Code of Conduct suspension, Rudnikas says that NSU's reason for suspending him is pretextual because NSU didn't also suspend his friend who engaged in the same misconduct. But the record reflects that Rudnikas and his friend are not similarly situated. For one, the friend shared the confidential report with one only person (Rudnikas) outside of a public context; Rudnikas, on the other hand, shared the report with an entire classful of people in an online groupchat. And for another, the friend met with NSU and accepted responsibility; Rudnikas did not cooperate with efforts to set his disciplinary hearing, did not attend his disciplinary hearing, and did not accept responsibility. These crucial differences between the two means that we cannot say that NSU's proffered non-retaliatory explanation is "unworthy of credence." *Springer*, 509 F.3d at 1348.[6]

***

Rudnikas seeks a preliminary injunction requiring his former law school to reverse his Code of Conduct suspension and erase a failing grade. While his status as a former student does not

---

academically dismissing Rudnikas without allowing him to retake the class because he also made this claim for the first time at oral argument. *Id.*

[6] Because Rudnikas hasn't shown that the district court erred in concluding that he hadn't shown a likelihood of success on the merits, we do not analyze the other factors for a preliminary injunction. *Johnson & Johnson Vision Care, Inc. v. 1-800 Contacts, Inc.*, 299 F.3d 1242, 1247 (11th Cir. 2002) ("If the movant is unable to establish a likelihood of success on the merits, a court need not consider the remaining conditions prerequisite to injunctive relief.").

21-12801                Opinion of the Court                19

moot his appeal, Rudnikas has not shown that the district court erred in denying preliminary relief.  We therefore affirm the district court's order denying Rudnikas's preliminary-injunction motion.

**AFFIRMED**.[7]

---

[7] All pending motions are **DENIED AS MOOT**.